STATE OF WEST VIRGINIA

*v.*

RICKY ODELL BAKER

(No. 15316)

Decided February 24, 1982.

*Valentine, Wilson & Partain and Eric H. O'Briant* for appellant

*Chauncey H. Browning*, Attorney General, *and Silas B. Taylor*, Assistant Attorney General, for appellee.

McHUGH, JUSTICE:

This case is before this Court on an appeal from a final order of the Circuit Court of Logan County, entered on November 14, 1980, which denied the defendant Ricky Odell Baker's motion to set aside the verdict and award him a new trial. That order also sentenced the defendant to a determinate term of ten years imprisonment for the crime of armed robbery.[1] The defendant assigns four errors on this appeal: (1) a court ordered psychiatric

---

[1] This Court recently discussed the definitions and development of the different types of robbery in *State v. Harless*, ____ W. Va. ____, 285 S.E.2d 461 (1981), where we said: "We believe that these acts should be called 'aggravated' robbery since they do not relate to whether the defendant is armed." 285 S.E.2d at 464.

examination was never conducted; (2) the trial judge's failure to conduct, *sua sponte*, an *in camera* hearing on the in-court identification of the defendant; (3) ineffective assistance of counsel; and (4) insufficiency of the evidence. The errors assigned will be considered in the order presented.

## I. *THE CRIME*

On the evening of December 29, 1979, David Wyatt was hitchhiking on U.S. Route 52 between Logan and Taplin. He was given a ride by three men in an old car with a broken window. One of the men sitting in the rear seat held a gun to Wyatt's head and relieved him of his wallet and some personal possessions. Wyatt identified that man as the defendant.

After Wyatt's assailants released him, he reported the incident to the police. Shortly after the report, which included a detailed description of the car and the people in it, two officers of the Man Police Department saw a car matching the description given by Wyatt. The car was stopped and the three men in the car were arrested. One of those men was the defendant.

## II. *THE PSYCHIATRIC EXAMINATION*

The defendant was arrested on December 29, 1979. Shortly thereafter Eric H. O'Briant was appointed to represent the defendant. On January 29, 1980, O'Briant filed a motion notifying the Court and the prosecutor that the defendant intended to enter a plea of not guilty by reason of insanity and requesting a court ordered psychiatric examination. The motion was not opposed by the State and was granted by an order entered on January 30, 1980. On February 11, 1980, the Circuit Court of Logan County entered an order granting O'Briant's motion to be relieved as counsel and appointing Mark Campbell as counsel in his place. The defendant was tried for the crime charged on June 23, 1980. This trial resulted in a hung jury and a mistrial was declared. The defendant was retried in October of 1980, which trial resulted in the

conviction from which this appeal is taken. No psychiatric examination of the defendant was ever conducted.

In a recent case, *State v. Church*, ___ W. Va. ___, 284 S.E.2d 897 (1981), we indicated that it was the defense counsel's duty to request a competency hearing should one be desired under *W. Va. Code*, 27-6A-1(d) [1977]. In the case presently before us a competency examination was requested under *W. Va. Code*, 27-6A-1(a) [1977], by O'Briant. Campbell, who replaced O'Briant as defense counsel, did not pursue the psychiatric examination. We address the question of whether this constitutes ineffective assistance of counsel in section IV of this opinion. Initially, we must ascertain if the mere failure to have the psychiatric examination conducted was reversible error. We hold that it was not.

Clearly, the trial judge did not have the responsibility to insure that the psychiatric examination was conducted because it was not brought to his attention. In *State v. Moran*, ___ W. Va. ___, 285 S.E.2d 450 (1981), we held that a defendant's allegation of inadequate discovery was waived by his counsel's failure to bring his discovery motion on for a hearing. We there said: "Defense counsel must assume the burden of bringing these motions to the attention of the trial court." 285 S.E.2d at 453. The reason for such a rule is well established in West Virginia:

> 'The proceedings of the lower court are presumed to be regular, unless the contrary affirmatively appears upon the record, and objections taken for the first time in the appellate court will not be regarded in any matter of which the court had jurisdiction or which might have been remedied in the trial court if objected to there.' 1B M.J., Appeal and Error § 103 (1967).
>
> West Virginia is firmly committed to this general rule and has only deviated from it on few occasions, and then only in extraordinary situations.

*State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445, 457 (1974).

## III. *THE IN-COURT IDENTIFICATION*

Shortly after the defendant and his companions were arrested, the police conducted a "show-up" where Wyatt identified the defendant as his assailant. Wyatt also identified the defendant as his assailant at the defendant's trial. No evidence of the prior out-of-court "show-up" was introduced by the State at the defendant's trial. No motion was made to suppress the in-court identification and no hearing was held on that issue.

The defendant, on this appeal, recognizes that this is not error under syllabus point 6 of *State v. Pratt,* 161 W. Va. 530 244 S.E.2d 227 (1978): "A defendant must be allowed an *in camera* hearing on the admissibility of a pending in-court identification when he challenges it because the witness was a party to pre-trial identification procedures that were allegedly constitutionally infirm." This standard was reaffirmed as recently as *State v. Morgan,* ___ W. Va. ___, 284 S.E.2d 924 (1981).

The defendant on this appeal asks us to require trial courts to hold an *in camera* hearing on the admissibility of in-court identifications in all cases whether there is a request to do so or not. We decline to so hold and reaffirm our holding in syllabus point 6 of *State v. Pratt, supra.*

## IV. *INEFFECTIVE ASSISTANCE OF COUNSEL*

The defendant assigns six specific occurrences which he alleges to constitute ineffective assistance of counsel: (1) the failure to obtain the court ordered psychiatric examination; (2) the failure to move to suppress a .22 caliber pistol seized from the car at the time of the defendant's arrest; (3) the failure to move to suppress the in-court identification; (4) the alleged refusal of Campbell to allow the defendant to participate in jury selection; (5) the failure to "follow the guidelines set forth ... in *State v. Brant,* 162 W. Va. 762. 252 S.E.2d 901 (1979)," relating to an intoxication defense; and (6) the failure to request a stay of execution pending appeal. We find these assignments to be without merit.

## A. *THE PSYCHIATRIC EXAMINATION*

This allegation of ineffective assistance of counsel is, in reality, an example of differing trial strategies. O'Briant's strategy was to enter a plea of insanity. A psychiatric examination would have been necessary to that defense. Campbell, however, chose to present a defense of incapacity due to intoxication. The psychiatric examination was not necessary to that defense.

There was no evidence at trial that the defendant suffered from any mental illness. The defendant presented a case of incapacity due to intoxication. The defense did present expert testimony on the effect of drugs and alcohol on the defendant. This defense worked at the defendant's first trial which resulted in a hung jury. In *State v. Thomas, supra,* we held, at syllabus point 21: "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of the accused."

## B. *THE .22 CALIBER PISTOL*

When the Man police officers stopped the car in which the defendant was a passenger on December 29, 1979, all three occupants of the car were in the front seat. One officer approached the driver of the car and asked for his license. He noticed that the defendant kept reaching under the front seat of the car. The officers had been advised that the suspects in the robbery were armed. The officer ordered the men out of the car. He then reached under the seat and retrieved the .22 caliber pistol which was subsequently introduced at the defendant's trial without objection. The officer did not conduct any further search of the car. He testified that he "was just worried about the gun and getting them back to town."

Counsel error which does not affect the outcome of trial will not be considered a ground for reversal, even if that

error would constitute an instance of ineffective assistance.

> In the determination of a claim that an accused was prejudiced by ineffective assistance of counsel violative of Article III, Section 14 of the West Virginia Constitution and the Sixth Amendment to the United States Constitution, courts should measure and compare the questioned counsel's performance by whether he exhibited the normal and customary degree of skill possessed by attorneys who are reasonably knowledgeable of criminal law, except that proved counsel error which does not affect the outcome of the case, will be regarded as harmless error.

Syl. pt. 19, *State v. Thomas, supra.* We reiterated this rule in *Carrico v. Griffith,* ___ W. Va. ___, 272 S.E.2d 235, 237 (1980), where we said: "If counsel's error, proven to have occurred, would not have changed the outcome of the case, it will be treated as harmless error."

In this case, if a suppression motion had been made it would have been properly denied. *See, e.g., State v. Tomey,* 163 W. Va. 578, 259 S.E.2d 16 (1979). The search here was valid and the gun was properly admissible into evidence. So, even if it was error for the trial counsel not to move to suppress that evidence, it would not have affected the outcome of the trial had he done so. It would, therefore, be harmless.

## C. *THE IN-COURT IDENTIFICATION*

The identity of the defendant as Wyatt's assailant was never in question at his trial. The defense was one of incapacity due to intoxication. On the basis of the record before us, it is also clear that the in-court identification was properly admissible under syllabus point 3 of *State v. Casdorph,* 159 W. Va. 909, 230 S.E.2d 476 (1976). The trial counsel's failure to move to suppress the in-court identification was harmless if, indeed, it was even erroneous.

## D. *JURY SELECTION*

The defendant, in his brief, admits that this assignment "is raised for the first time on appeal and is not shown in

the record." Even if it was shown in the record that trial counsel did not feel bound by the defendant's objections to certain jury panel members in this case, we do not think that it would be error. The defendant was a resident of North Carolina. He had no connections to the Logan County area and had been there only on the occasion of the crime. The defendant's attorney, on the other hand, was a resident of the county and was familiar with it and its inhabitants.

## E. THE INTOXICATION DEFENSE

This assignment is totally without basis. We said, in *State v. Brant, supra,* 252 S.E.2d at 904:

> So that this case cannot be misconstrued and will be limited to its facts, it should be reiterated that intoxication can never be used as a defense where it is alleged that there was *diminished capacity* except where previous exceptions apply, but can only be used when there is demonstrated a *total* lack of capacity such that the bodily machine completely fails. Furthermore, where a weapon is involved it must affirmatively appear that the defendant had no predisposition to commit the crime or to engage in aggressive antisocial conduct which the voluntary intoxication brought to the forefront.

We must admit that we are baffled by the defendant's assigning this aspect of the case as an example of ineffective assistance. This defense is obviously one of the hardest to maintain in our law. Yet trial counsel here presented testimony from the defendant and from an expert on this very defense which led to a hung jury in the first trial. We would hardly call such a result with such a difficult defense an example of ineffective assistance.

## F. *STAY OF EXECUTION*

The failure to request a stay of execution pending appeal was not a denial of effective assistance of counsel

at trial in violation of the defendant's constitutional rights. It does not even pertain to the outcome of the trial.

We take this opportunity to issue a word of caution. A charge of ineffective assistance of counsel is not one to be made lightly. It is a serious charge which calls into question the integrity, ability and competence of a member of the bar. We suggest that counsel consider carefully the facts of a case before raising this issue, keeping the Code of Professional Responsibility readily in mind.[2]

## V. SUFFICIENCY OF THE EVIDENCE

The defendant argues that the evidence of his intoxication at the time of the crime was uncontested and that, therefore, the State failed to prove the requisite intent by proof beyond a reasonable doubt. As we said in *State v. Vance,* ___ W. Va. ___, 285 S.E.2d 437, 444 (1981): "Voluntary drunkenness will not ordinarily excuse a crime." In this case there was abundant evidence from which the jury could have properly inferred that the defendant had the requisite intent necessary for the crime of armed robbery.

For the foregoing reasons the judgment of the Circuit Court of Logan county is affirmed.

*Affirmed.*

---

[2] *See, e.g., W. Va. Code of Professional Responsibility,* DR 7-102(A), which provides, in part:

In his reprentation of a client, a lawyer shall not: (1) File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another. (2) Knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.