299 S.E.2d 375

**STATE of West Virginia**

v.

**Richard GRAVELY.**

No. 15545.

Supreme Court of Appeals of
West Virginia.

Dec. 13, 1982.

**430**

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

Bradley J. Pyles, Smith, Crandall, Pyles & Rowe, Logan, for appellant.

McHUGH, Justice:

This case is before this Court upon the petition of Richard Gravely for an appeal from his conviction in the Circuit Court of Logan County, West Virginia, of the offense commonly known as armed robbery.[1] On June 2, 1981, a jury returned a verdict of guilty against the defendant. By order entered on July 13, 1981, the defendant was sentenced to the West Virginia Penitentiary for a definite term of 15 years. This Court has before it the petition for appeal, all matters of record, including a transcript of the defendant's trial, and the briefs and argument of counsel.

This case concerns the identification of the defendant as one of two persons involved in the robbery. This Court will discuss the issues in this appeal in four separate sections. Section one discusses the question of whether, with respect to a pretrial identification of the defendant by the robbery victim, the defendant's right to counsel under the Sixth Amendment to the Constitution of the United States and under the Constitution of West Virginia was violated. Section two of the opinion also dis-

cusses the defendant's right to counsel. However, section two concerns the defendant's right to due process under the Constitution of the United States and under the Constitution of West Virginia in terms of whether an identification of the defendant at trial was tainted by alleged suggestive pretrial identifications of the defendant. Due process in this context generally prohibits impermissibly suggestive pretrial identification procedures, which improper procedures may be overcome, as we reaffirm below, by the "independent source" exception. The area of the law relating to section two of this opinion has been fully discussed by this Court in previous cases. Section three of the opinion discusses the admission at trial of testimony relating to a pretrial identification of the defendant by the robbery victim. We emphasize that the discussion in section three is in the context of the defendant's right to counsel under the Sixth Amendment to the Constitution of the United States and under the Constitution of West Virginia. In section three, this Court is presented with an occasion to consider the constitutional principles set forth in *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). Briefly, *Moore* recognizes that a defendant's right to counsel attaches upon the institution of an adversary judicial criminal proceeding and that, unless the defendant waives his right to counsel, a subsequent identification procedure conducted in the absence of counsel violates the defendant's Sixth Amendment right to counsel. *Moore* further recognizes that such an improper identification procedure may not be described by an identifying witness at trial.[2] Section four of the opinion discusses the refusal of

---

**1.** *W.Va.Code*, 61–2–12 [1961], provides, in part, as follows:

 If any person commit, or attempt to commit, robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever, he shall be guilty of a felony, and, upon conviction, shall be confined in the penitentiary not less than ten years.

The above provision of *W.Va.Code*, 61–2–12 [1961], refers to the offense of "armed robbery." *State ex rel. Vandal v. Adams*, 145 W.Va. 566, 569, 115 S.E.2d 489, 490 (1960). However, as

this Court stated in *State v. Ferguson*, 168 W.Va. 684, 285 S.E.2d 448 (1981): "[A]lthough the terms of 'armed' and 'unarmed' have historically been applied to the two types of robbery under the statute, the more accurate terms would be 'aggravated' and 'unaggravated.'" 168 W.Va. at 686, 285 S.E.2d at 449–50.

**2.** The defendant's right to counsel under the Constitution of the United States is found in *U.S. Const.*, amend. VI. The defendant's right to counsel under the Constitution of West Virginia is found in *W.Va. Const.*, art. III, § 14.

 The defendant's right to due process under the Constitution of the United States is found in

the circuit court to give one of the defendant's instructions as originally offered.

On January 3, 1981, at approximately 5:15 a.m., an A & P grocery store in Logan County, West Virginia, was robbed by two males. One male, unmasked, held a revolver upon the store cashier, Jeffrey C. Stevens, while the other perpetrator, wearing a ski mask, took a sum of money from the cash register. The perpetrators fled on foot, and Stevens immediately called the Logan County Sheriff's Office. In addition to Stevens, a stock clerk by the name of David Sargent and possibly one store customer witnessed the robbery.

At approximately 5:22 a.m. that day, Deputy William Simpkins and Sgt. G.R. Clinger of the Logan County Sheriff's Office were dispatched to investigate the robbery. The officers stopped their cruiser at Penny's Drive Inn where they spotted two suspects. One suspect escaped, and the other suspect, Robert West, was taken into custody. At Penny's Drive Inn the officers found a revolver and $346. Part of the money was found in a sock, and the rest was scattered upon the ground.

With West in the police cruiser, the officers stopped at the A & P grocery store, picked up Stevens, the robbery victim, and drove to the Logan County Courthouse. The county jail and magistrate offices are located in that courthouse. At the jail, Stevens gave a statement to the police concerning the robbery but could not identify West as one of the perpetrators. Stevens then left the courthouse.

Based upon statements of West made after he was taken into custody, police officers, at approximately 9:00 a.m. on January 3, 1981, proceeded to the West home where they located and arrested the defendant, Richard Lee Gravely.[3] The police then called Stevens and stated that another suspect had been found. Stevens was asked to return to the courthouse.

On January 3, 1981, at 9:56 a.m., at the Logan County Courthouse, the defendant, after the completion of a form committing him to jail, received a statement of his rights from Deputy Simpkins. That morning, in the jail section of the courthouse, Stevens, observing the defendant from a separate room, was unable to identify the defendant as one of the perpetrators. The defendant was then taken to a magistrate office in the basement of the courthouse where the defendant was advised by a magistrate of the robbery charge. The defendant's bond was set at $10,000. In the magistrate's office the defendant completed an acknowledgment of rights form upon which the defendant indicated his desire to be represented by counsel.[4]

Upon leaving the magistrate's office, the defendant in the courthouse basement was again observed by Stevens. Stevens was sitting in a police cruiser. As a result of Steven's observation of the defendant in the courthouse basement, Stevens identified the defendant as the unmasked robber who held the revolver during the robbery of the A & P grocery store.

The record indicates that the observations of the defendant in the jail and courthouse basement by Stevens were at the instigation of police officers. The defendant is black, and no black men other than the defendant were present during those observations. At no time was the defendant placed in a line-up for observation by Stevens or other witnesses to the robbery.

It should be noted that prior to trial Stevens (the robbery victim) and David Sargent (the store clerk) were shown a selection of five or six photographs of persons from which Stevens and Sargent independently identified the defendant as one of the perpetrators of the robbery. The record indicates that Stevens and Sargent previously knew or were familiar with

---

*U.S. Const.,* amend. V and amend. XIV. The defendant's right to due process under the Constitution of West Virginia is found in *W. Va. Const.,* art. III, § 10.

**3.** At the defendant's preliminary hearing and at trial, Deputy Simpkins testified that he could identify the defendant as the suspect who fled

from Officers Simpkins and Clinger at Penny's Drive Inn. At trial, Sgt. Clinger verified that testimony.

**4.** Upon the magistrate acknowledgment of rights form the defendant checked a box which stated as follows: "I want counsel appointed for me."

some, but not all, of the persons in those photographs.

Subsequent to the defendant's preliminary hearing and indictment for robbery, the defendant filed a motion to suppress all evidence of pretrial identification of the defendant as one of the perpetrators of the robbery and any evidence derived from such pretrial identification. On April 13, 1981, a hearing was held upon that motion by the circuit court and evidence was taken. By order entered on April 15, 1981, the motion to suppress was overruled.

The defendant's trial was conducted on June 2, 1981, during which Stevens and Sargent made in-court identifications of the defendant as the unmasked robber of the A & P grocery store. Further, evidence was admitted at trial concerning the pretrial observations of the defendant by Stevens in the jail and basement areas of the Logan County Courthouse. Evidence concerning the photographic displays was also admitted. The defendant submitted the defense of alibi. The jury returned a verdict of guilty against the defendant, and the defendant's motion to set aside the verdict was overruled.

### The Right to Counsel

The issue this Court must first consider is whether the identification of the defendant by Stevens in the courthouse basement as one of the perpetrators violated the defendant's Sixth Amendment right to counsel and corresponding right under the Constitution of West Virginia. As indicated below, a resolution of that issue depends upon whether adversary judicial criminal proceedings had been instituted against the defendant prior to that identification.

The record indicates that prior to the basement identification of the defendant, the defendant was arrested and taken to the Logan County Courthouse where he received a statement of his rights from Deputy Simpkins. Furthermore, prior to the basement identification, the defendant was taken to the magistrate's office where, *inter alia,* (1) he was informed of the charge against him, (2) bond was set, and (3) the defendant expressed a desire to be represented by counsel.[5]

In *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972), a robbery victim identified two men at a police station confrontation as the persons who robbed him. At trial, the robbery victim described this pretrial identification and identified the two men again in the courtroom. The two men were convicted, and the United States Supreme Court affirmed.

---

5. The magistrate proceeding of January 3, 1981, was required by *W.Va.Code,* 62–1–5 [1965], and *W.Va.Code,* 62–1–6 [1965]. *W.Va.Code,* 62–1–5 [1965], provides as follows:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant for an offense committed in his presence, shall take the arrested person without unnecessary delay before a justice of the county in which the arrest is made. When a person arrested without a warrant is brought before a justice, a complaint shall be filed and a warrant issued forthwith. The officer executing the warrant shall make return thereof to the justice before whom the defendant is brought.

*W.Va.Code,* 62–1–6 [1965], provides as follows:

The justice shall in plain terms inform the defendant of the nature of the complaint against him, of his right to counsel and, if the offense is to be presented for indictment, of his right to have a preliminary examination. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. He shall provide the defendant reasonable means to communicate with an attorney or with at least one relative or other person for the purpose of obtaining counsel or arranging bail. The defendant shall not be committed to jail or removed from the county of arrest until he has had a reasonable opportunity to confer with counsel or to arrange bail. He may be detained under such security measures as the circumstances warrant. If the defendant is unable to provide bail or if the offense is unbailable, he shall be committed to jail.

In *State v. Mason,* 162 W.Va. 297, 249 S.E.2d 793 (1978), this Court stated as follows:

Article VIII § 15 of the Judicial Reorganization Amendment of 1974 abolished the office of justice of the peace, effective January 1, 1977, and W.Va.Code § 50–1–17 [1976] requires that all references in the West Virginia Code to 'justices of the peace' or to 'justice' when meaning 'justice of the peace' shall be construed to mean magistrate as created by the provisions of that chapter.

162 W.Va. at 298, n. 1, 249 S.E.2d at 795, n. 1.

Important to the decision in *Kirby* was the fact that at the time of the pretrial showup, neither accused person had been indicted or otherwise formally charged with any criminal offense. At that time, neither accused had asked for legal assistance nor had been advised of any right to the presence of counsel.

■ In *Kirby*, the Court recognized that an accused's federal constitutional Sixth and Fourteenth Amendment right to counsel "attaches only at or after the time that adversary judicial proceedings have been initiated against him." 406 U.S. at 688, 92 S.Ct. at 1881, 32 L.Ed.2d at 417. The Court indicated that adversary judicial criminal proceedings could be initiated by way of "formal charge, preliminary hearing, indictment, information, or arraignment." 406 U.S. at 689, 92 S.Ct. at 1882, 32 L.Ed.2d at 417. No such criminal proceedings had been initiated against the accused men in *Kirby* at the time of the pretrial confrontation. The Court, therefore, declined to declare inadmissible the robbery victim's testimony concerning his identification of the two men at the pretrial confrontation.[6]

In *State v. Moore*, 158 W.Va. 576, 212 S.E.2d 608 (1975), a victim of a breaking and entering identified the defendant as one of the perpetrators at a police line-up prior to trial. The defendant was subjected to the line-up without the assistance of counsel. At that time, the defendant had been jailed upon another charge and had not been indicted for the breaking and entering. At his trial for breaking and entering, the defendant was again identified by the victim, but at no time during the trial was the line-up mentioned.

In *State v. Moore*, this Court affirmed the defendant's breaking and entering conviction. Citing the *Kirby* case, *supra*, this Court held that the defendant's right to counsel had not been violated with respect to the line-up. This Court held in syllabus point 1: "An accused is not constitutionally entitled to the assistance of counsel when placed in a line-up pursuant to and during a routine investigation of a crime and prior to the initiation of adversary judicial criminal proceedings against him." [7]

The facts in the case before this Court clearly indicate that, prior to the identification of the defendant in the courthouse basement by Stevens, adversary judicial criminal proceedings had been instituted against the defendant. Unlike the facts in *Kirby* and *Moore*, *supra*, the defendant in this action had been informed of the charges against him by the magistrate, and the defendant had requested counsel. As stated in C. Whitebread, *Constitutional Criminal Procedure* (1978), at 212: "The Court in *Kirby*, although holding that there was no right to counsel, based its decision on the fact that the confrontation preceded the initiation of judicial criminal proceedings." Unlike the facts in *Moore*, the defendant in this action, at the time of the basement identification, was at a point in the criminal process beyond "a routine investigation of a crime." The defendant was one of two prime suspects. He had been informed by a magistrate that he was charged with robbery, and he had requested counsel with respect to that charge.[8]

---

6. In *Kirby, supra,* the United States Supreme Court was primarily concerned with an accused's right to counsel in the context of pretrial identifications. However, the Court also noted as follows: "The Due Process Clause of the Fifth and Fourteenth Amendments forbids a lineup that is unnecessarily suggestive and conducive to irreparable mistaken identification." 406 U.S. at 691, 92 S.Ct. at 1883, 32 L.Ed.2d at 418.

7. In *State v. Moore, supra,* this Court stated as follows: "It is not, however, essential to the guarantee of an accused's constitutional rights that he be afforded the assistance of counsel at every stage of the investigation—from the commission of the crime to the time of his arrest." 158 W.Va. at 582–583, 212 S.E.2d at 612–13.

8. *W.Va.Code,* 51–11–3 [1977], provides, in part, as follows: "A needy person who is being detained by a law-enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, is entitled to representation by an attorney...." In the action before this Court, the defendant requested the appointment of counsel.

Furthermore, *W.Va.R.Crim.P.* 44(a), provides, in part, as follows: "(a) *Right to Assigned Counsel.*—Every defendant who is unable to obtain counsel shall be entitled to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the magistrate or the court through appeal, un-

■ Consequently, we hold that an adversary judicial criminal proceeding is instituted against a defendant where the defendant after his arrest is taken before a magistrate pursuant to *W. Va. Code,* 62–1–5 [1965], and is, *inter alia,* informed pursuant to *W. Va. Code,* 62–1–6 [1965], of the complaint against him and of his right to counsel. Furthermore, where the defendant at that magistrate proceeding expresses a desire to be represented by counsel, a subsequent pretrial identification of the defendant at a police initiated line-up or one-on-one police initiated confrontation between the defendant and a witness or crime victim, without notice to and in the absence of defense counsel, constitutes a violation of the defendant's right to counsel under the Sixth Amendment to the Constitution of the United States and under art. III, § 14, of the Constitution of West Virginia, so as to preclude any trial testimony in regard to the identification procedure.

### The In-Court Identifications

As indicated above, the police initiated basement identification of the defendant by Stevens as one of the perpetrators of the robbery violated the defendant's right to counsel. In addition, the basement identification was suggestive.

The robbery of the A & P grocery store was committed by two black males. At the time Stevens identified the defendant in the courthouse basement, the defendant was the only black male present. The identification occurred as the defendant was being escorted from the magistrate office to the county jail. Thus, the identification resulted from a one-on-one view of the defendant by Stevens. No line-up was ever conducted. Such one-on-one confrontation procedures are inherently more suggestive than line-up identification procedures. In *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the Court stated as follows: "The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it. . . ." 388 U.S. at 302.

The issue to be resolved, however, is whether the basement identification of the defendant, being suggestive and conducted in violation of the defendant's right to counsel, tainted Steven's in-court identification of the defendant and thus violated the defendant's right to due process under the Constitution of the United States and under the Constitution of West Virginia. As a result of the *in camera* hearing conducted prior to trial, the trial court resolved that issue by submitting to the jury the question of the defendant's identity as one of the perpetrators of the robbery.[9] As indicated below, this Court is of the opinion that the trial court acted correctly.

In *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the defendant, charged with bank robbery, was required by police to participate in a post-indictment line-up. The line-up was conducted in the absence of the defendant's counsel. At the line-up and later at trial the defendant was identified by bank employees as the perpetrator. The Supreme Court vacated the defendant's conviction and remanded the case for a hearing to determine whether the in-court identifications of the defendant had a source independent of the post-indictment line-up procedure.

In *United States v. Wade, supra,* the Court held that although the line-up did not violate the defendant's constitutional privilege against self-incrimination, the line-up

---

less he waives such appointment." The West Virginia Rules of Criminal Procedure took effect on October 1, 1981. *See W. Va. R. Crim. P.* 59.

**9.** In syllabus point 6 of *State v. Pratt,* 161 W.Va. 530, 244 S.E.2d 227 (1978), this Court held as follows: "A defendant must be allowed an *in camera* hearing on the admissibility of a pending in-court identification when he challenges it

because the witness was a party to pre-trial identification procedures that were allegedly constitutionally infirm." *See also* Syl. pt. 1, *State v. Swiger,* 169 W.Va. 724, 289 S.E.2d 497 (1982); Syl. pt. 2, *State v. Baker,* 169 W.Va. 357, 287 S.E.2d 497 (1982); Syl. pt. 1, *State v. Morgan,* 168 W.Va. 506, 284 S.E.2d 924 (1981); Syl. pt. 1, *State v. Watson,* 164 W.Va. 642, 264 S.E.2d 628 (1980).

was a critical stage in the prosecution at which the defendant was entitled to counsel. As the Court stated:

Since it appears that there is grave potential for prejudice, intentional or not, in the pretrial lineup, which may not be capable of reconstruction at trial, and since presence of counsel itself can often avert prejudice and assure a meaningful confrontation at trial, there can be little doubt that for Wade the post-indictment lineup was a critical stage of the prosecution at which he was 'as much entitled to such aid [of counsel] ... as at the trial itself.' *Powell v. Alabama,* 287 U.S. 45, 57 [53 S.Ct. 55, 59, 77 L.Ed. 158].

388 U.S. at 236, 87 S.Ct. at 1937.

It should be noted that although the Court in *United States v. Wade, supra,* concluded that the defendant's right to counsel at the post-indictment line-up had been violated, the Court declined to hold that the in-court identifications of the defendant should automatically be excluded at trial. Rather, the Court stated that the government should have "the opportunity to establish by clear and convincing evidence that the in-court identifications were based upon observations of the suspect other than the lineup identification." 388 U.S. at 240, 87 S.Ct. at 1939.[10]

An inadvertent confrontation took place between the victim and the accused in *State v. Casdorph,* 159 W.Va. 909, 230 S.E.2d 476 (1976). In that action, the defendant was arrested for the robbery of a cab driver. At the police station, the cab driver was instructed by his employer to see if he could identify his assailant. At that time, the cab driver identified the defendant. The cab driver later identified the defendant at trial.

■ This Court concluded in *State v. Casdorph* that the inadvertent confrontation between the cab driver and the defendant at the police station did not result in prejudice to the defendant at trial. The defendant's conviction for robbery was affirmed. This Court noted that the cab driver was able to make an extensive observation of his assailant at the time of the robbery. In syllabus point 3, this Court held as follows:[11]

In determining whether an out-of-court identification of a defendant is so tainted as to require suppression of an in-court identification a court must look to the totality of the circumstances and determine whether the identification was reliable, even though the confrontation procedure was suggestive, with due regard given to such factors as the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

This Court is of the opinion that, considering the totality of the circumstances, the

---

**10.** In *United States v. Wade, supra,* the Court required the government, in light of the improper line-up procedure, to show that the in-court identifications of the defendant were derived from a source independent of the line-up. The Court stated:

A rule limited solely to the exclusion of testimony concerning identification at the lineup itself, without regard to admissibility of the courtroom identification, would render the right to counsel an empty one.

\*　　\*　　\*　　\*　　\*　　\*

Since counsel's presence at the lineup would equip him to attack not only the lineup identification but the courtroom identification as well, limiting the impact of violation of the right to counsel to exclusion of evidence only of identification at the lineup itself disregards a critical element of that right.

388 U.S. at 240–41, 87 S.Ct. at 1939.

**11.** Cases of this Court in accord with syllabus point 3 of *State v. Casdorph, supra,* include the following: Syl. pt. 2, *State v. Swiger,* 169 W.Va. 724, 289 S.E.2d 497 (1982); Syl. pt. 2, *State v. Morgan,* 168 W.Va. 506, 284 S.E.2d 924 (1981); Syl. pt. 4, *State v. Carter,* 168 W.Va. 90, 282 S.E.2d 277 (1981); Syl. pt. 4, *State v. Boyd,* 167 W.Va. 385, 280 S.E.2d 669 (1981); Syl. pt. 4, *State v. Critzer,* 167 W.Va. 655, 280 S.E.2d 288 (1981); Syl. pt. 3, *State v. Hawkins,* 167 W.Va. 473, 280 S.E.2d 222 (1981); Syl. pt. 1, *State v. Rickman,* 167 W.Va. 128, 278 S.E.2d 880 (1981); Syl. pt. 6, *State v. Demastus,* 167 W.Va. 128, 270 S.E.2d 649 (1980); Syl. pt. 2, *State v. Foddrell,* 165 W.Va. 540, 269 S.E.2d 854 (1980); Syl. pt. 3, *State v. McNeal,* 162 W.Va. 550, 251 S.E.2d 484 (1978); Syl. pt. 1, *State v. Williams,* 162 W.Va. 348, 249 S.E.2d 752 (1978); Syl. pt. 1, *State v. Kennedy,* 162 W.Va. 244, 249 S.E.2d 188 (1978).

State in this case established at trial that the observation by Stevens of the perpetrators during the robbery was sufficient to form the basis of Stevens' in-court identification of the defendant, regardless of the improper basement identification of the defendant prior to trial.

■ The veracity of Stevens' in-court identification of the defendant was clearly a question properly submitted to the jury. In accord with *State v. Casdorph, supra*, the State and the defendant have emphasized those matters of evidence in the record relative to: (1) Stevens' opportunity to view the perpetrators at the time of the robbery, (2) Stevens' degree of attention during the robbery, (3) the accuracy of Stevens' description of the perpetrators to the police, (4) the level of certainty demonstrated by Stevens at the time of his pretrial observations of the defendant and (5) the length of time between the robbery and those pretrial confrontations.

The facts concerning the above factors of *State v. Casdorph* are in conflict in this case. However, it is clear that the area of the robbery was well lighted and that Stevens was near to and looked at the unmasked robber later identified by Stevens as the defendant. Stevens testified at trial: "Q. Regardless of whether you saw him in the basement of the court house or in the jail or any other time since then, would you have any problem today identifying Richard Gravely as the man that held the gun on you? A. No, sir."

We find no error, therefore, with respect to Stevens' in-court identification of the defendant. Nor, upon a careful examination of the record, do we find error with respect to the in-court identification of the defendant by David Sargent. The defendant's right to due process was not violated.

### The Admission of Pretrial Identifications

The testimony of a witness at trial concerning a pretrial identification of an accused could enhance the impact upon the jury of the witness' in-court identification of the accused. *See Gilbert v. California,*

*infra,* 388 U.S. at 273, 87 S.Ct. at 1957. During the trial in this action, pretrial identification testimony concerning the basement identification of the defendant by Stevens and the photographic displays was admitted into evidence. This Court must determine whether the admission of that testimony constituted error.

In *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), the defendant was convicted of armed robbery and murder. His trial contained a guilt stage and a penalty stage. At the trial, certain witnesses testified that they had identified the defendant at a police line-up. That line-up took place after the defendant had been indicted and without notice to defense counsel. The defendant was identified by those witnesses at trial.

In *Gilbert v. California,* the Court, citing *United States v. Wade,* indicated that the line-up was improper because of the absence of defense counsel. The Court, therefore, remanded the action to afford the government an opportunity to establish that the in-court identifications of the defendant were derived from a source independent of the illegal line-up. 388 U.S. at 272, 87 S.Ct. at 1956.

In *Gilbert v. California,* however, the Court treated as a separate issue the testimony at trial of certain witnesses that they had identified the defendant at the line-up. As the Court stated:

Quite different considerations are involved as to the admission of the testimony of the manager of the apartment house at the guilt phase and of the eight witnesses at the penalty stage that they identified Gilbert at the line-up. That testimony is the direct result of the illegal lineup.... Only a *per se* exclusionary rule as to such testimony can be an effective sanction to assure that law enforcement authorities will respect the accused's constitutional right to the presence of his counsel at the critical line-up.

388 U.S. at 272–273, 87 S.Ct. at 1957.

Nevertheless, in *Gilbert v. California,* the Court noted that, although the testimony at trial of certain witnesses that they

had identified the defendant at the illegal line-up was inadmissible, the admission of such testimony at trial may have been harmless error, if harmless error could be indicated "beyond a reasonable doubt." 388 U.S. at 274, 87 S.Ct. at 1957.

In *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977), the defendant was convicted of rape and related offenses. The defendant was identified by the victim at a one-on-one government initiated confrontation during the defendant's preliminary hearing. The defendant was not represented by counsel at that hearing. At trial, the victim testified on direct examination by the government that at the preliminary hearing she had identified the defendant as her assailant. The victim further testified that the defendant on trial was the man who had raped her.

In *Moore v. Illinois,* the Court, recognizing that the defendant's preliminary hearing was an adversary judicial criminal proceeding within the meaning of *Kirby v. Illinois, supra,* concluded that the defendant's right to counsel had been violated. The Court noted that, with respect to the defendant's right to counsel, a one-on-one identification procedure should not be distinguished from a police line-up.

The Court in *Moore v. Illinois* further concluded that it was error for the victim to testify on direct examination at trial that she had identified the defendant at the preliminary hearing as her assailant, the defendant having been without counsel at that preliminary hearing. The Court stated:

> [P]etitioner's Sixth Amendment rights were violated by a corporeal identification conducted after the initiation of adversary judicial criminal proceedings and in the absence of counsel.... *Gilbert* held that the prosecution cannot buttress its case-in-chief by introducing evidence of a pretrial identification made in viola-

tion of the accused's Sixth Amendment rights....

98 S.Ct. at 466.

The Court in *Moore v. Illinois* remanded the action for a determination of whether the failure at trial to exclude the victim's testimony concerning the improper pretrial identification constituted "harmless constitutional error." 98 S.Ct. at 466.

In the case before this Court, Stevens, the robbery victim, testified during the State's case in chief and described to the jury his pretrial observations of the defendant in the jail and basement areas of the Logan County Courthouse. Stevens testified that he was asked on January 3, 1981, if he could identify a suspect other than Robert West as one of the robbers. Although Stevens could not identify the defendant in the jail area of the courthouse, Stevens later identified the defendant in the courthouse basement. Specifically, Stevens testified that he was in the back of a police cruiser when the defendant was brought from the magistrate office. The defendant was stopped beside the cruiser and then taken to jail. Stevens indicated that he identified the defendant when the defendant was beside the police cruiser.

As indicated by the *Gilbert* and *Moore* cases, *supra,* the State should not have been permitted to elicit testimony from Stevens in its case in chief concerning Stevens' basement identification of the defendant which identification was conducted in violation of the defendant's Sixth Amendment right to counsel and corresponding right under the Constitution of West Virginia. Such testimony was likely to have improperly enhanced the impact upon the jury of Stevens' in-court identification.

In *State v. Clark,* 170 W.Va. 224, 292 S.E.2d 643 (1982), this Court stated as follows: "We have recognized the constitutional harmless error doctrine in several cases." 292 S.E.2d at 648.[12] However,

---

12. In *State v. Boyd,* 160 W.Va. 234, 233 S.E.2d 710 (1977), this Court stated as follows: "[W]here the State defends against the claim that a right guaranteed by our Constitution has been violated, on the basis that the violation is harmless error, it is incumbent on the State to

show that the error was harmless beyond a reasonable doubt." 160 W.Va. at 245, 233 S.E.2d at 718. Similarly, in *State v. Stout,* 169 W.Va. 90, 285 S.E.2d 892 (1982), this Court stated: "Under our doctrine of harmless constitutional error, the State can avoid a reversal

unlike the Supreme Court of the United States directed in *Gilbert* and *Moore,* we are not inclined under the facts in this particular case to remand this action for a determination of constitutional harmless error. The police initiated one-on-one confrontation in this action was clearly conducted in violation of the defendant's right to counsel, and that confrontation was described by Stevens to the jury at trial. Such testimony could not but have a significant impact upon the jury. We are, therefore, of the opinion that the admission of that testimony, concerning the pretrial identification of the defendant, to be error and that remanding this case upon the harmless error question would in this particular case serve no useful purpose.[13]

■■■ We hold that the admission at trial of the testimony of a witness that he identified an accused prior to trial at a police initiated line-up or police initiated one-on-one confrontation between the witness and the accused, which pretrial identification procedure was a violation of the accused's right to counsel under the Sixth Amendment to the Constitution of the United States and under art. III, § 14, of the Constitution of West Virginia, constitutes reversible error, unless the admission of such testimony at trial is shown to be harmless constitutional error.[14] As indicated above, however, we are not remanding this case upon the question of harmless constitutional error.

It should further be noted that upon cross-examination by defense counsel, testimony was elicited that Stevens and Sargent independently identified the defendant pri-

or to trial from photographic displays. The record indicates that those photographic displays were somewhat suggestive. However, we are not inclined from a review of the record to hold that the admission of that testimony was so improper or the displays so suggestive as to constitute reversible error.

### *Defendant's Instruction No. 14*

The defendant contends that the trial court erred in refusing to give defendant's instruction no. 14, as originally offered, which instruction, the defendant contends, would have informed the jury of the proper standards to be applied in criminal trials concerning the identification issue. We disagree.

Defendant's instruction no. 14, as originally offered, is comparable to the model instruction adopted by the United States Court of Appeals in *United States v. Telfaire,* 469 F.2d 552 (D.C.Cir.1972).

In *United States v. Telfaire,* the Court recognized the need in criminal cases for a special instruction upon the issue of the identity of the accused as the perpetrator of the crime in question. Accordingly, the Court adopted a model instruction concerning the identification issue.[15] As the Court stated: "[The instruction] is not being set forth in terms of compulsion, but a failure to use this model, with appropriate adaptations, would constitute a risk in future cases that should not be ignored unless there is strong reason in the particular case." 469 F.2d at 557.

---

only by a showing that the error was harmless beyond a reasonable doubt." 169 W.Va. at 92, 285 S.E.2d at 893.

In *State v. Stout,* this Court remanded the action for a determination of whether the absence of defense counsel at the defendant's preliminary hearing constituted harmless error. In *State v. Stout,* this Court directed as follows: "We remand this case for a *hearing* on the limited issue concerning the preliminary hearing." (emphasis added). 169 W.Va. at 93, 285 S.E.2d at 894.

**13.** It should be noted that if testimony had not been adduced during the State's case in chief concerning the improper pretrial identification of the defendant, this section of the opinion would not have been necessary.

**14.** The decisions of the Supreme Court of the United States in *United States v. Wade, Gilbert v. California* and *Stovall v. Denno, supra,* are important in the area of pretrial identification. This Court in this opinion has attempted to harmonize the various issues concerning pretrial identification discussed in those and other cases. In that regard, it should be noted that *United States v. Wade, Gilbert v. California* and *Stovall v. Denno* were decided on June 12, 1967, and that the majority opinions in those cases were delivered by Justice Brennan. Justice Brennan, however, dissented in *Kirby v. Illinois, supra,* which case was decided in 1972.

**15.** The text of the model instruction appears in *United States v. Telfaire, supra. See also State v. Payne,* 167 W.Va. 252, at 262–263, 280 S.E.2d 72 at 78–79 (1981).

In *State v. Payne,* 167 W.Va. 252, 280 S.E.2d 72 (1981), the defendant was convicted of statutory rape. The victim made an in-court identification of the defendant, and, although her testimony was not contradicted, it was uncorroborated by other testimony. The record disclosed several factors limiting the reliability of the victim's identification of the defendant. In remanding the action to the circuit court, this Court held in syllabus point 5 as follows:

Where the State's case is based upon the uncorroborated and uncontradicted identification testimony of a prosecuting witness, it is error not to instruct the jury upon request that, if they believe from the evidence in the case that the crime charged against the defendant rests alone on the testimony of the prosecuting witness, then the jury should scrutinize such testimony with care and caution.

In so holding, this Court in *State v. Payne* considered the instruction concerning the issue of identification recommended by the federal court in *United States v. Telfaire, supra.* As this Court stated:

We think that this type instruction may be appropriate in cases where the State's case rests largely upon the uncorroborated identification testimony of a witness. The instruction may also be modified to fit the circumstances of any other type of case involving identification testimony where, in the trial judge's discretionary opinion, the giving of such an instruction would aid the jury. We emphasize that we are not here mandating the use of this type instruction in every case involving identification testimony. Rather, we note that this type instruction may be proper in cases where the identification testimony is uncorroborated.

We think that this type instruction is a logical corollary and extension of a long line of cases dealing with identification testimony.

167 W.Va. at 263, 280 S.E.2d at 79.

 This Court is of the opinion that the instructions which were given to the jury in this case were sufficient to properly alert the jury to the identification issue. As in *State v. Payne,* we decline to mandate the use of the model instruction adopted in *United States v. Telfaire.* It should be noted that unlike the facts in *State v. Payne* the identification testimony of Stevens, the principal witness for the State, was corroborated by the testimony of David Sargent and to a lesser extent by the testimony of the police officers. *See* n. 2, *supra.* The officers testified that they observed the defendant with West at Penny's Drive Inn shortly after the robbery.

All other issues raised by the defendant in this appeal are without merit.

Upon all of the above, the judgment order of the Circuit Court of Logan County, West Virginia, is hereby reversed.

Reversed.